**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BRIDGET MCMULLAN,<br><br>Plaintiff,<br><br>v.<br><br>IMG CORPORATIONS, INC. aka IMARKET GLOBAL INC. aka IMG CORP., SUMMIT ENERGY, INC.; SFE ENERGY INC.; SFE ENERGY CANADA INC.; SFE ENERGY PENNSYLVANIA, INC. aka SFE ENERGY; JEREMY BLAND; JOHN DOE CORPORATION #1, JOHN DOE CORPORATION #2, JOHN DOE CORPORATION #3,<br><br>Defendants. | CIVIL ACTION NO. 2:26-CV-03004 |

# MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT

Theresa M. Zechman, Esquire
Mallory C. McRae, Esquire
STEVENS & LEE

51 South Duke Street
Lancaster, Pennsylvania 17602
Telephone: (717) 399-6644
Facsimile: (610) 236-4185
theresa.zechman@stevenslee.com
mallory.mcrae@stevenslee.com

*Attorneys for Defendants, Summit Energy, Inc., SFE Energy Inc., SFE Energy Canada, Inc., and SFE Energy Pennsylvania, Inc.*

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... iii

PRELIMINARY STATEMENT .......... 1

PROCEDURAL HISTORY AND CLAIMS ASSERTED .......... 1

A. PARTIES SUBJECT TO SUIT .......... 1

B. CLAIMS ASSERTED .......... 2

LEGAL STANDARD .......... 3

LEGAL ARGUMENT .......... 3

I. DISMISSAL OF ALL THE CLAIMS AGAINST MOVANTS IS WARRANTED DUE TO PLAINTIFF'S FAILURE TO COMPLY WITH FED. R. CIV. P. 8(A)(2) .......... 3

II. PLAINTIFF'S FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES, AS AGAINST SUMMIT, SFE ENERGY AND SFE CANADA, WARRANTS DISMISSAL OF THE TITLE VII AND PHRA CLAIMS AGAINST THOSE DEFENDANTS .......... 7

III. PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED BY FAILING TO PLEAD FACTS TO ESTABLISH AN EMPLOYMENT RELATIONSHIP BETWEEN PLAINTIFF AND MOVANTS .......... 9

IV. CLAIMS FOR NEGLIGENCE AND INTENTIONAL TORTS ARE BARRED UNDER STATE LAW .......... 15

V. THE PHRA PREEMPTS PLAINTIFF'S CLAIMS OF RETALIATION/ COERCION AND NEGLIGENT TRAINING, SUPERVISION, AND RETENTON .......... 16

VI. UNDER PENNSYLVANIA LAW, PLAINTIFF HAS NO COGNIZABLE CLAIM AGAINST THE MOVANTS FOR CORPORATE NEGLIGENCE/DIRECT LIABILITY .......... 18

VII. CLAIMS FOR FRAUD AND NEGLIGENT MISREPRESENTATION FAIL FOR LACK OF SPECIFICITY UNDER FED. R. CIV. P. 9(B) OR OTHERWISE FAIL TO STATE A CLAIM UNDER FED. R. CIV. P. 12(B)(6) .......... 18

VIII. PLAINTIFF'S COMPLAINT FAILS TO ASSERT FACTS SUFFICIENT TO STATE A CLAIM OF ALTER EGO LIABILITY ................. 21

IX. NO SUPPLEMENTAL JURISDICTION EXISTS OVER THE ENERGY CONTRACT CLAIMS OR THE IDENTITY THEFT CLAIM BECAUSE THOSE CAUSES OF ACTION ARE UNRELATED TO THE FACTS ASSERTED AS THE BASIS FOR FEDERAL QUESTION JURISDICTION ................. 22

X. IN THE EVENT THE TITLE VII CLAIMS ARE DISMISSED AGAINST SUMMIT, SFE ENERGY AND SFE CANADA, NO SUPPLEMENTAL JURISDICTION WOULD REMAIN OVER ANY OF THE REMAINING STATE LAW CLAIMS AS AGAINST THOSE DEFENDANTS ................. 24

XI. THE ENERGY CONTRACT AND IDENTITY THEFT CLAIMS SHOULD BE DISMISSED BECAUSE THEY ARE WITHIN THE PRIMARY JURISDICTION OF THE PENNSYLVANIA PUBLIC UTILITY COMMISSION ................. 24

CONCLUSION ................. 29

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adair v. Cigna Corporate Services, LLC*,
818 F. Supp. 3d 641 (E.D. Pa. 2026) ....2

*Anderson v. Finley Catering Co., Inc.*,
218 F. Supp. 3d 417 (E.D. Pa. 2016) ....10,12,14

*Angelillio v. Facebook*,
No. 4:23-CV-1078, 2024 WL 4529564 (M.D. Pa. Oct. 18, 2024) ....2

*Bartol v. Barrowclough*,
251 F. Supp. 3d 855 (E.D. Pa. 2017) ....4,5

*Baykeeper v. NL Indus. Inc.*,
660 F.3d 686 (3d Cir. 2011)....25,26

*Booker v. National R.R. Passenger Corp.*,
880 F. Supp. 2d 575 (E.D. Pa. 2012) ....17

*U.S. ex rel. Budike v. PECO Energy*,
897 F Supp.2d 300 (E.D. Pa. 2012) ....19

*Cheyney State Coll. Fac. v. Hufstedler*,
703 F.2d 732 (3d. Cir. 1983)....25

*Connelly v. Lane Const. Corp.*,
809 F.3d 780 (3d. Cir. 2016)....14

*Culbreth v. Amosa (Pty) Ltd.*,
898 F.2d 13 (3d. Cir. 1990)....21

*Delaware State College v. Ricks*,
449 U.S. 250 (1980)....9

*Doe v. McDonald's USA, LLC*,
504 F. Supp. 3d 360 (E.D. Pa. 2020) ....14

*Ebrahimi v. City of Huntsville Bd. of Educ.*,
114 F.3d 162 (11th Cir. 1997) ....5

*Emmell v. Phoenixville Hospital Company, LLC*,
303 F. Supp. 3d 314 (E.D. Pa. 2018) ....8

*Estate of Goldberg v. Nimoityn*,
193 F. Supp. 3d 482 (E.D. Pa. 2016) ........................................................................18

*Hewitt v. BS Transportation of Illinois, LLC*,
355 F. Supp. 3d 227 (E.D. Pa. 2019) ..................................................................11,14

*Hyland v. Smyrna School Dist.*,
608 Fed. Appx. 79 (3d Cir. 2015) ..............................................................................9

*Hynson v. City of Chester Legal Dep't*,
864 F.2d 1026 (3d Cir. 1988)......................................................................................4

*Imboden v. Chowns Communications*,
182 F. Supp. 2d 453 (E.D. Pa. 2002) ........................................................................15

*U.S. ex rel. Int'l Brotherhood of Elec. Workers, Loc. Union No. 98 v. Farfield Co.*,
No. 09-4230, 2017 WL 4269048 (E.D. Pa. Sept. 26, 2017) ....................................25

*Jiffy Lube Intern., Inc. v. Jiffy Lube of Pennsylvania, Inc.*,
848 F. Supp. 569 (E.D. Pa. 1994) ............................................................................21

*Jordan v. Staffing Plus, Inc.*,
315 F. Supp. 3d 844 (E.D. Pa. 2018) ........................................................................24

*Kahn v. American Heritage Life Ins. Co.*,
324 F. Supp. 2d 652 (E.D. Pa. 2004) ........................................................................24

*Lyon v. Whisman*,
45 F.3d 758 (3d Cir. 1995)........................................................................................23

*Magerr v. City of Phila.*,
No. 2:15-cv-4264, 2016 WL 1404156 (E.D. Pa. Apr. 11, 2016)..............................8

*Magluta v. Samples*,
256 F.3d 1282 (11th Cir. 2001) ..................................................................................4

*Malleus v. George*,
641 F.3d 560 (3d Cir. 2011)........................................................................................3

*Mandel v. M & Q Packaging Corp.*,
706 F.3d 157 (3d Cir. 2013)........................................................................................8

*McGrenaghan v. St. Denis School*,
979 F. Supp. 323 (E.D. Pa. 1997) ............................................................................15

*McLaughlin v. Bayer Corporation*,
172 F.Supp.3d 804 (E.D. Pa. 2016) ..........................................................................20

*McNaney v. Sampson and Morris Grp., Inc.*,
No. 2:21-cv-1809, 2022 WL 1017388 (W.D. Pa. Apr. 5, 2022) ....................8

*Mendelsohn, Drucker & Associates v. Titan Atlas Mfg., Inc.*,
885 F. Supp. 2d 767 (E.D. Pa. 2012) ....................19

*Miller-Nuss v. Service America Corp.*,
No. 2:89-cv-05416, 1990 WL 2801 (E.D. Pa. Jan. 16, 1990)....................16,17

*Myers v. Garfield & Johnson Enterprises, Inc.*,
679 F. Supp. 2d 598 (E.D. Pa. 2010) ....................11

*Phillips v. County of Allegheny*,
515 F.3d 224 (3d Cir. 2008)....................19

*P.R. Mar. Shipping Auth. v. Valley Freight Sys., Inc.*,
856 F.2d 546 (3d Cir. 1988)....................25

*In re Rockefeller Ctr. Props., Inc. Secs. Litig.*,
311 F.3d 198 (3d Cir. 2002)....................19

*Rorrer v. Cleveland Steel Container*,
712 F. Supp. 2d 422 (E.D. Pa. 2010) ....................15,16

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*,
742 F.2d 786 (3d Cir. 1984)....................19

*Smith v. Delaware River Stevedores*,
No. 2:07-cv-01864, 2008 WL 4890135 (E.D. Pa. Nov. 10, 2008) ....................8

*Smith v. RB Distribution, Inc.*,
498 F. Supp. 3d 645 (E.D. Pa. 2020) ....................9

*Sneberger v. Cruise411.com, Inc.*,
2:00-cv-03023, 2001 WL 322558 (E.D. Pa. Jan. 31, 2001) ....................14

*Talbert v. American Water Works Company, Inc.*,
538 F. Supp. 3d 471 (E.D. Pa. 2021) ....................15,25

*Thompson v. Glenmede Trust Company*,
No. 92-5233, 1993 WL 197031 (E.D. Pa. June 8, 1993)....................21

*United States v. Kensington Hosp.*,
760 F.Supp. 1120 (E.D.Pa.1991) ....................19

*United States v. Philadelphia National Bank*,
374 U.S. 321, 83 S. Ct. 1715, 10 L.Ed.2d 915 (1963) ....................28

*Wadley v. Kiddie Academy International, Inc.*,
No. 2:17-cv-05745, 2018 WL 3035785 (E.D. Pa. June 19, 2018)..........................................11

*Warren Gen. Hosp. v. Amgen, Inc.*,
643 F.3d 77 (3d Cir. 2011)..........................................................................................3

*Weiland v. Palm Beach Cnty. Sheriff's Office*,
792 F.3d 1313 (11th Cir. 2015) ..................................................................................4,5

*Wilson v. Crescent Hotels & Resorts, LLC*,
No. 2:25-cv-01504, 2026 WL 27823 (E.D. Pa. Jan. 5, 2026)..................................................8

*Wright v. City of Phila.*,
No. 01-6160, 2005 WL 3091883 (E.D. Pa. Nov. 17, 2005) .....................................................4

*Yonkauske v. Lehigh Gorge Scenic Railway*,
No. 3:24-cv-02044, 2025 WL 2991316 (M.D. Pa. Oct. 23, 2025) ..........................................18

*Zucal v. County of Lehigh*,
660 F. Supp. 3d 334 (E.D. Pa. 2023) ..........................................................................3

**State Cases**

*Bell Tele. Co. of Pa. v. Sanner*,
375 A.2d 93 (Pa. Super. 1977).....................................................................................27

*Blue Pilot Energy, LLC v. Pa. PUC*,
241 A.3d 1254 (Pa. Cmwlth. 2020) ..........................................................................26,27

*Borough of Lansdale v. Phila. Elec. Co.*,
170 A.2d 566 (Pa. 1961) ............................................................................................27

*Byer v. Peoples Nat. Gas Co.*,
380 A.2d 383 (Pa. Super. 1977)....................................................................................27

*Chester Cnty. v. Phila. Elec. Co.*,
218 A.2d 331 (Pa. 1966) ............................................................................................27

*Einhorn v. Phila. Elec. Co.*,
190 A.2d 569 (Pa. 1963) ............................................................................................27

*Elkin v. Bell Tele. Co.*,
372 A.2d 1203 (Pa. Super. 1977)..................................................................................27

*Elkins v. Bell Tel. Co. of Pa.*,
420 A.2d 371 (Pa. 1980) ............................................................................................28

*Fogelsville & Trexlertown Elec. Co. v. Pa. Power & Light Co.*,
114 A. 822 (Pa. 1921) ................................................................................................27

*Harrison v. Health Network Laboratories Limited Partnerships*,
659 Pa. 537 (Pa. 2020)....................17

*HIKO Energy, LLC v. Pa. PUC*,
163 A.3d 1079 (Pa. Cmwlth. 2017), aff'd, 209 A.3d 246 (Pa. 2019)....................26,27

*Thompson v. Nason Hosp.*,
527 Pa. 330 (Pa. 1991)....................18

*Village at Camelback Property Owners Assn. Inc. v. Carr*,
371 Pa.Super. 452, 538 A.2d 528 (1988)....................21

**Federal Statutes**

28 U.S.C.A. § 1367....................1,22,23

Title VII of the Civil Rights Act of 1964.................... *passim*

FLSA....................223

**State Statutes**

42 Pa.C.S § 8315....................3

66 Pa. C.S. §§ 501-502, 701-703, 1301-1312, and 3301....................27

66 Pa. C.S § 2809....................25

Pennsylvania Human Relations Act.................... *passim*

Pennsylvania's Electricity Generation Customer Choice and Competition Act, 66
Pa. C.S. §§ 2801-2815....................25,26

Pennsylvania Unfair Trade Practices Act, 73 P.S. § 201-1 *et seq.*....................3

Pennsylvania Workers' Compensation Act....................15,16

**Rules**

Fed. R. Civ. P. 8(a)(2).................... *passim*

Fed. R. Civ. P. 9(b).................... *passim*

Fed. R. Civ. P. 12(b)(2)....................1,14

Fed. R. Civ. P. 12(b)(6).................... *passim*

Rule 7.1....................2

**Regulations**

52 Pa. Code §§ 54.171-180, and 111.1-111.14 ....................26

**Other Authorities**

*Commonwealth v. IDT Energy, Inc.*,
PA PUC, Docket No. C-2014-2427657, filed Dec. 18, 2014 ....................27

*License Application of SFE Energy Pennsylvania, Inc. d/b/a SFE or SFE Energy for Approval to Offer, Render, Furnish or Supply Electricity or Electric Generation Services as a Supplier of Retail Electric Power*, PA PUC Docket Number A-2013-2353576 (Order entered August 15, 2013)....................26

*Novak v. Palmco Energy PA LLC d/b/a Indra Energy*,
PA PUC, Docket No. F-2024-3046076, Final Order entered Sept. 15, 2025 ....................28

*Pa. Pub. Util. Comm'n v. Energy Servs. Providers, Inc.*,
PA PUC, Docket No. M-2013-2325122, Opinion and Order entered Oct. 2, 2014....................27

*Pa. Pub. Util. Comm'n v. MXenergy Elec., Inc.*,
PA PUC, Docket No. M-2012-2201861, Opinion and Order entered Aug. 29, 2013....................28

*Pa. Pub. Util. Comm'n v. Liberty Power Holdings, LLC*,
PA PUC, Docket No. M-2019-2568471, Opinion and Order entered Apr. 15, 2021) ....................27

## PRELIMINARY STATEMENT

Defendants, Summit Energy, Inc. (individually, "Summit"), SFE Energy Inc. (individually, "SFE Energy"), SFE Energy Canada, Inc. (individually, "SFE Canada"), and SFE Energy Pennsylvania, Inc. (individually, "SFE Pennsylvania") (collectively, at times, "Movants"), submit this Memorandum of Law in Support of Their Motion to Dismiss the Complaint ("Complaint") filed by plaintiff, Bridget McMullan ("Plaintiff"), based upon: (1) failure to state a claim under Fed. R. Civ. P. 12(b)(6) and/or failure to adhere to Fed. R. Civ. P. 8(a)(2) and 9(b); (2) lack of supplemental jurisdiction pursuant to 28 U.S.C.A. § 1367 and personal jurisdiction under Fed. R. Civ. P. 12(b)(2); and (3) under the doctrine of primary jurisdiction.

## PROCEDURAL HISTORY AND CLAIMS ASSERTED

### A. PARTIES SUBJECT TO SUIT

Plaintiff commenced this action on May 4, 2026 (ECF No. 1) against the following defendants:

- IMG Corporations, Inc. ("IMG Inc."), which Plaintiff asserts is also known as iMarket Global, Inc. ("iMarket") and IMG Corp.;
- Summit;
- SFE Energy;
- SFE Canada;
- SFE Pennsylvania;
- Jeremy Bland ("Mr. Bland"); and
- John Doe Corporation Nos. 1 through 3. (Complaint, ¶¶ 1, 10-11).

Plaintiff, at times, refers to IMG Inc., iMarket and IMG Corp. as one party. (Complaint, ¶ 10). However, publicly available corporate records show that these entities are two separate New

York corporations. (*See* public records from the New York Department of State attached as Exhibits A and B); *see also Adair v. Cigna Corporate Services, LLC*, 818 F. Supp. 3d 641, 656 (E.D. Pa. 2026) ("In assessing motions to dismiss, the Third Circuit has taken judicial notice of publicly available documents on government websites."). These records indicate that: (1) iMarket filed a certificate of incorporation in 2013, which was amended in 2020, changing iMarket's name to IMG Corp. (Ex. A.); and (2) IMG Inc. filed a certificate of incorporation in 2022. (Ex. B). Plaintiff apparently refers to Movants, at times, as one party as well (Complaint, ¶ 11) but they are four separate legal entities. (*See* Rule 7.1 Disclosure Statements filed with this Motion).[1] Summit is a corporation formed in Canada; SFE Energy is a corporation formed in Delaware; SFE Canada is a corporation formed in Canada; and SFE Pennsylvania is a corporation formed in Delaware. (*Id.*)

**B. <u>CLAIMS ASSERTED</u>**

The gravamen of the Complaint concerns claims arising from Plaintiff's alleged employment for: (1) sexual harassment, sex discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") (Count One); (2) violations of the Pennsylvania Human Relations Act ("PHRA") (Count Two); (3) negligent infliction of emotional distress (Count Three); (4) intentional infliction of emotional distress (Count Four); (5) negligence (Count Five); (6) retaliation/coercion (Count Six); (7) negligent training, supervision and retention (Count Seven); and (8) "corporate negligence / direct liability" (Count Eight), (*i.e.*, Counts One through Eight, collectively referred to at times as "Discrimination Based Employment Claims").

[1] *See Angelillio v. Facebook*, No. 4:23-CV-1078, 2024 WL 4529564, at *6 n. 31 (M.D. Pa. Oct. 18, 2024) (where court considered a Rule 7.1 Disclosure Statement addressing corporate status of a defendant on a motion to dismiss).

(Complaint, ¶¶ 6, 69-158, and 172-266). Two additional claims contain assertions of assault and battery against Mr. Bland, Plaintiff's alleged co-worker and supervisor. (*Id.*, ¶¶ 298-311).

In addition to the Discrimination Based Employment Claims and the assault/battery causes of action, Plaintiff asserts that she was improperly enrolled, without her knowledge, into an energy supply contract in violation of the Pennsylvania Unfair Trade Practices Act ("UTPCPL") 73 P.S. §201-1 *et seq*. and, further, sues for fraud and negligent misrepresentation due to this alleged contract (*i.e.*, the Energy Contract Claims). (*Id.*, ¶¶ 159-171; 267-297). Plaintiff also claims to be the victim of identity theft due to the unauthorized enrollment into the energy supply contract in violation of 42 Pa.C.S § 8315. (*Id.*, ¶¶ 312-320, *i.e.*, the Identity Theft Claim).

## LEGAL STANDARD

As stated by the Third Circuit in *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011), a Fed. R. Civ. P. 12(b)(6) inquiry includes identifying the elements of a claim, disregarding any allegations that are no more than conclusions and then reviewing the well-pleaded allegations of the complaint to evaluate whether the elements of the claim are sufficiently alleged. In deciding the motion, the court is to "'accept all factual allegations as true, [and] construe the complaint in the light most favorable to the plaintiff.'" *Zucal v. County of Lehigh*, 660 F. Supp. 3d 334, 344 (E.D. Pa. 2023) (citing *Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)) (Gallagher, J.).

## LEGAL ARGUMENT

### I. DISMISSAL OF ALL THE CLAIMS AGAINST MOVANTS IS WARRANTED DUE TO PLAINTIFF'S FAILURE TO COMPLY WITH FED. R. CIV. P. 8(A)(2).

Prior to analyzing Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff's claims against Summit, SFE Energy, SFE Canada, and SFE Pennsylvania fail in their entirety due to her repeated failure to adhere to Fed. R. Civ. P. 8(a)(2), which requires "[a] pleading that states a claim

for relief" to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Complaints that violate this rule 'are often disparagingly referred to as 'shotgun pleadings.''" *Bartol v. Barrowclough*, 251 F. Supp. 3d 855, 859 (E.D. Pa. 2017) (quoting *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015)).

In *Bartol*, the court explained shotgun pleadings as follows:

> The Third Circuit has criticized "the all too common shotgun pleading approach" to complaints. *Hynson v. City of Chester Legal Dep't*, 864 F.2d 1026, 1031 n.13 (3d Cir. 1988); *see also Wright v. City of Phila*., No. 01-6160, 2005 WL 3091883, at *11 (E.D. Pa. Nov. 17, 2005) (citing *Hynson* for the proposition that "[t]he Third Circuit ... has a policy against Plaintiffs using a 'shotgun pleading approach' ... and requires civil rights cases [to] be plead[ed] with considerable specificity."). It has explained that requiring a plaintiff to plead facts with specificity "ha[s] a twofold purpose: 1) to weed out at an early stage frivolous claims and those that should be heard in state court, and 2) to provide the defendant with sufficient notice of the claims asserted." *Hynson*, 864 F.2d at 1031 n.13.
>
> The United States Court of Appeals for the Eleventh Circuit has articulated the bulk of existing law in this area. The Eleventh Circuit recently categorized shotgun pleadings into four different types: (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts"; (2) a complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) a complaint that does "not separat[e] into a different count each cause of action or claim for relief"; and (4) **a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.**" *Weiland*, 792 F.3d at 1321–23. [Emphasis added.] The "unifying characteristic" of these four types of shotgun pleadings "is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id*. at 1323.
>
> In describing the "relatively rare" fourth type of shotgun pleading, the Eleventh Circuit cited two of its earlier decisions as illustrative examples. *See id*. at 1323 n.14. In *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001), the court found that a complaint that was fifty-eight pages long, named fourteen defendants, and charged all defendants in each count was **"a quintessential 'shotgun' pleading" because it was "replete with allegations that 'the defendants' engaged in certain conduct, making no**

> **distinction among the fourteen defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of."** *Id*. at 1284. [Emphasis added.] Similarly, in *Ebrahimi v. City of Huntsville Bd. of Educ*., 114 F.3d 162, 164 (11th Cir. 1997), the court described as a "prototypical 'shotgun complaint' " one that "offered vague and conclusory factual allegations in an effort to support a multiplicity of discrimination claims leveled against 15 defendants." *Id*.

*Bartol*, 251 F. Supp. 3d at 859-60.

Here, Plaintiff's Complaint, which is fifty-three (53) pages long and includes three hundred and twenty (320) individual allegations, brings fourteen (14) different counts against six (6) distinct Defendants, exclusive of the three (3) "John Doe" corporations named in the Complaint. Plaintiff's Complaint exemplifies two types of improper shotgun pleadings recognized by the *Weiland* Court. Specifically, the Complaint: (1) contains multiple counts where each count adopts the allegations of all preceding counts; and (2) "'assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.'" *Bartol*, 251 F. Supp. 3d at 859 (citation omitted).

With the exception of Counts XII (assault) and XIII (battery) (the latter claim being erroneously numbered a second Count XII), both of which claims are only asserted against Mr. Bland, it is impossible to ascertain from the Complaint what conduct is being attributed against which particular corporate Defendant. In nearly all the remaining causes of action, Plaintiff refers only generally to "Defendants," and, sometimes, confusingly, to "Defendant," without any statement as to precisely what each Defendant did that is alleged to be unlawful, leaving Movants to guess whether such allegations pertain to them. (*See* Complaint, ¶¶ 127-136; 138-147; 153; 158-160; 162; 163; 165; 166; 168; 170; 173-175; 177-181; 183; 185-188; 189; 191; 193-195; 197-

204; 206; 207; 209; 210; 226; 230; 233-237; 239; 240; 243; 245-258; 260-263; 265; 266-274; 276-281; 282-285; 288-296; and 314-320.). For example, Plaintiff alleges as follows:

> 6. Defendants subjected Plaintiff to harassment and discrimination on the basis of sex, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-2, *et seq.* (hereinafter "Title VII"), and of the Pennsylvania Human Relations Act, as amended, 43 P.S. §§ 951, *et seq.* (hereinafter the "PHRA"). (Complaint, ¶ 6).
>
> 21. Upon information and belief, Defendants jointly controlled the terms and conditions of Plaintiff's employment, including hiring, supervision, discipline, and termination, and therefore acted as joint employers and/or a single integrated employer under applicable law. In the alternative, to the extent any Defendant is determined not to be part of a single integrated enterprise, each such Defendant nevertheless exercised sufficient control over Plaintiff's employment to qualify independently as her "employer" within the meaning of Title VII and the PHRA, either directly or through agents. Accordingly, each Defendant is liable individually and/or jointly and severally for the unlawful conduct alleged herein. In further alternative, Defendants acted as agents of one another and/or delegated supervisory authority among affiliated entities, such that the unlawful conduct described herein was committed within the scope of such agency relationships and with the apparent authority conferred by each Defendant. (*Id*., ¶ 21).
>
> 23. Upon information and belief, Defendants maintained a workforce that meets or exceeds the statutory threshold for coverage under Title VII, including employees operating across multiple locations and through affiliated entities. Defendants' employees were subject to centralized control of labor relations, common management, and interrelated operations. (*Id*., ¶ 23).
>
> 131. Defendant's actions were in violation of Title VII of the Civil Rights Act of 1964, which prohibits employment discrimination based on race, color, religion, sex and national origin. (*Id*., ¶ 131).

Compounding matters further, in violation of Fed. R. Civ. P. 8(a)(2), Plaintiff's allegations contain confusing and contradictory allegations concerning the identification of the defendants.

By way of example, Plaintiff first alleges that SFE Pennsylvania and unidentified "related entities" are to be referred to as "SFE." (Complaint, ¶ 1). Plaintiff contradicts the general reference to "SFE" by alleging that "SFE Energy" is known as Summit Energy, Inc., SFE Energy Canada, Inc., SFE Energy, Inc. and SFE Energy Pennsylvania, Inc. and refers to them as "SFE". (Complaint, ¶ 11). Plaintiff confusingly refers to "SFE Energy," presumably a different party from "SFE," but does not specify which SFE corporate entity is the subject of that allegation. (*Id.*, ¶ 2). Plaintiff also makes allegations about "iMarket Global Inc.," defined by Plaintiff as "IMG." (*Id.*) However, Plaintiff then contradicts those allegations about these party identifiers by referring to "Defendant IMG Corporation" as "IMG" and "Defendant SFE Energy and its affiliated entities" as "SFE." (*Id.*, ¶ 4).

Such confusing and vague references to "Defendants," without any specific and consistent identification of the name of the corporate party, fail to furnish notice of the factual allegations that are to serve as the basis of the claims. This deficiency is compounded by the fact that the first paragraph in each Count, with the exception of Count V, incorporates all these vague allegations so as to repeat them as a purported factual basis for those claims. (Complaint, ¶¶ 172, 190, 196, 208, 227, 238, 259, 267, 275, 287, and 312).

Because Plaintiff's Complaint violates Fed. R. Civ. P. 8(a)(2), by failing to specify which defendants are responsible for the action and claims complained of in the pleading, just grounds exist to dismiss all the claims against the Movants.

## II. <u>PLAINTIFF'S FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES, AS AGAINST SUMMIT, SFE ENERGY AND SFE CANADA, WARRANTS DISMISSAL OF THE TITLE VII AND PHRA CLAIMS AGAINST THOSE DEFENDANTS.</u>

Before commencing an action under Title VII or the PHRA, Plaintiff must exhaust her administrative remedies by, *inter alia*, filing a timely charge of discrimination with the United

States Equal Employment Opportunity Commission ("EEOC"). "An EEOC charge must be filed within 300 days of the 'alleged unlawful employment practice[.]' . . . Otherwise, the claim is time barred and the claimant cannot recover." *Emmell v. Phoenixville Hospital Company, LLC*, 303 F. Supp. 3d 314, 325 (E.D. Pa. 2018) (citation omitted); *see also Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 164 (3d Cir. 2013) (180 days for PHRA claims).

Generally, a plaintiff must have named a defendant in the charge of discrimination in order to exhaust administrative remedies with regard to that particular defendant. *Smith v. Delaware River Stevedores*, No. 2:07-cv-01864, 2008 WL 4890135, at *3 (E.D. Pa. Nov. 10, 2008). "Courts should dismiss a PHRA claim where the administrative charge fails to reference the defendant unless the complaint alleges the defendant was informed of their potential liability prior to the plaintiff filing the administrative charge." *Wilson v. Crescent Hotels & Resorts, LLC*, No. 2:25-cv-01504, 2026 WL 27823, at *7 (E.D. Pa. Jan. 5, 2026).

In employment cases, the record on a motion to dismiss properly includes documents that were submitted to or received from the EEOC, regardless of whether such documents are attached to the plaintiff's pleading. *See, e.g., McNaney v. Sampson and Morris Grp., Inc.,* No. 2:21-cv-1809, 2022 WL 1017388, at *2 (W.D. Pa. Apr. 5, 2022) (collecting cases for proposition that "courts have construed the records of proceedings before the EEOC, including the issuance of its right-to-sue letter, as matters of public record that may be examined without conversion [of a motion to dismiss] to summary judgment."); *Magerr v. City of Phila.,* No. 2:15-cv-4264, 2016 WL 1404156, at *3 n.3 (E.D. Pa. Apr. 11, 2016) (noting that courts "may consider the administrative record before the EEOC on a Rule 12(b)(6) motion to determine whether administrative remedies have been exhausted.").

In Plaintiff's Charge of Discrimination (the "Charge"), she fails to identify each of the Defendants she now sues under Title VII and the PHRA. The Charge identifies "IMG Corporations/Summit Family Energy" as her employer. (ECF No. 1, Ex. 1). However, neither Plaintiff's Charge nor her nearly three-page factual narrative identify Summit, SFE Energy or SFE Canada as employers or respondents to the Charge. (*Id.*).

Significantly, the statute of limitations has elapsed on Plaintiff's claims under Title VII and the PHRA as against Summit, SFE Energy and SFE Canada because more than 300 days have passed since Plaintiff's alleged termination from employment on April 19, 2024. (Complaint, ¶¶ 117-121); *see Delaware State College v. Ricks*, 449 U.S. 250, 255-56 (1980) (affirming District Court's ruling that the respondent's Title VII claim was untimely because he had not filed his EEOC charge within 180 days after being advised by employer that his contract would expire by a date certain); *Hyland v. Smyrna School Dist.*, 608 Fed. Appx. 79, 82 (3d Cir. 2015) (affirming dismissal of "time-barred" claims "based on alleged events that occurred more than 300 days before Hyland filed her first charge with the EEOC"); *see also Smith v. RB Distribution, Inc.*, 498 F. Supp. 3d 645, 660-61 (E.D. Pa. 2020) (plaintiff brought several claims, including a claim for retaliation, with regard to plaintiff's suspension, and court concluded that this claim was not timely because it fell outside the statutory period).

Accordingly, it is respectfully submitted that just grounds exist to dismiss the Title VII and PHRA claims, in Counts One and Two of the Complaint, as against Summit, SFE Energy and SFE Canada, due to Plaintiff's failure to exhaust administrative remedies.

## III. PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED BY FAILING TO PLEAD FACTS TO ESTABLISH AN EMPLOYMENT RELATIONSHIP BETWEEN PLAINTIFF AND MOVANTS.

In the Complaint, Plaintiff employs catch-all and conclusory allegations to attempt to establish an employment relationship between her and the Movants by alleging:

> Upon information and belief, Defendants jointly controlled the terms and conditions of Plaintiff's employment, including hiring, supervision, discipline, and termination, and therefore acted as joint employers and/or a single integrated employer under applicable law. In the alternative, to the extent any Defendant is determined not to be part of a single integrated enterprise, each such Defendant nevertheless exercised sufficient control over Plaintiff's employment to qualify independently as her "employer" within the meaning of Title VII and the PHRA, either directly or through agents. Accordingly, each Defendant is liable individually and/or jointly and severally for the unlawful conduct alleged herein. In further alternative, Defendants acted as agents of one another and/or delegated supervisory authority among affiliated entities, such that the unlawful conduct described herein was committed within the scope of such agency relationships and with the apparent authority conferred by each Defendant. [Complaint ¶ 21].

To the extent Plaintiff alleges that any of the Movants employed Plaintiff, that assertion is vehemently denied. Putting that issue aside, Plaintiff nevertheless fails to allege sufficient facts to state a claim of liability against any of the Movants under the doctrines of: (1) single employer/integrated enterprise; (2) joint employment; and (3) agency. According to *Anderson v. Finley Catering Co., Inc.*, 218 F. Supp. 3d 417, 422 (E.D. Pa. 2016), when evaluating a claim of the existence of a single employer or integrated enterprise, the focus is "'on the degree of operational entanglement – whether operations of the companies are so united that nominal employees of one company are treated interchangeably with those of another.'" (citation omitted). Relevant facts necessary to establish that status include:

> (1) the degree of unity between the entities with respect to ownership, management (both directors and officers), and business functions (e.g., hiring and personnel matters), (2) whether they present themselves as a single company such that third parties dealt with them as one unit, (3) whether a parent company covers the salaries, expenses, or losses of its subsidiary, and (4) whether one entity does business exclusively with the other. [referenced herein as the "*Anderson* Factors"].

*Anderson*, 218 F. Supp. 3d at 422.

With regard to the joint employment doctrine, in *Hewitt v. BS Transportation of Illinois, LLC*, 355 F. Supp. 3d 227, 233-34 (E.D. Pa. 2019) the court held:

> When determining whether an entity exercises significant control with another employer, district courts in the Third Circuit have assessed the following factors: (1) the entity's authority to hire and fire employees, promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; (2) its day-to-day supervision of employees, including employee discipline; and (3) its control of employee records, including payroll, insurance, taxes and the like. [referenced herein as the "*Hewitt* Factors"].

Lastly, "where a plaintiff's employer acts as the agent of another entity for employment purposes, the other entity may also be subject to liability under Title VII." *Myers v. Garfield & Johnson Enterprises, Inc.*, 679 F. Supp. 2d 598, 611 (E.D. Pa. 2010). "An employee may be considered 'employed' by a third party as well as by the nominal employer if the third party has a right to control the employee's conduct, either directly or through the third party's control over the employer." *See id.*

The holding in *Wadley v. Kiddie Academy International, Inc.*, No. 2:17-cv-05745, 2018 WL 3035785 (E.D. Pa. June 19, 2018) supports a ruling here that Plaintiff has failed to plead facts sufficient to establish an employment relationship with Movants. In *Wadley*, the plaintiff brought, *inter alia*, claims under Title VII and the PHRA against three entities. 2018 WL 3035785, at *1. The defendants moved to dismiss, arguing that the plaintiff failed to allege facts sufficient to establish that two of the entities could be liable under a joint employer or a single employer theory. *Id.* at *2. The court found that the plaintiff "d[id] not allege a single fact from which the Court can infer that any of the joint or single employer theory factors are present." *Id.* at *3. In fact, the plaintiff had only alleged in a conclusory fashion that the two entities were single and joint employers of her. *Id.*

Here, Plaintiff has not sufficiently alleged whether and which of the Movants presented themselves as a single company such that third parties dealt with them as one unit (*i.e.*, *Anderson* Factor 2). By way of example, Plaintiff alleges that Edwin Grichanik ("Mr. Grichanik") held himself out to others as "the owner and principal decision-maker of both SFE and IMG." (Complaint, ¶ 34). Similarly, Plaintiff alleges that "SFE personnel would inform candidates that no positions with IMG were available and instead present an opportunity to work for SFE." (*Id.*, ¶ 44). By asserting that a distinction exists between two alleged employers, in how they hold each other out to the public, these allegations conflict with the required elements necessary to plead liability under the single employer/integrated enterprise theory.

Plaintiff also does not assert whether a parent company covers the salaries, expenses, or losses of its subsidiary (*i.e.*, *Anderson* Factor 3). On the contrary, Plaintiff alleges that "[a]t no time during Plaintiff's engagement was she provided with a Form W-2 nor a 1099, nor was she treated as an employee for payroll tax purposes performing work that was directed, controlled, and supervised by individuals associated with Defendants." (Complaint, ¶ 61). Further, Plaintiff alleges that there is "confusion as to which entity was responsible for Plaintiffs' [sic] compensation." (*Id.*, ¶ 5). Again, Plaintiff's allegations conflict with an element required to state a claim under the single employer/integrated enterprise doctrine.

As concerning under the joint employment theory, many of Plaintiff's allegations are conclusory and lack specific facts required to state a claim. For instance, Plaintiff alleges in a conclusory fashion that:

- "Defendants jointly controlled the terms and conditions of Plaintiff's employment, including hiring, supervision, discipline, and termination." (*Id.*, ¶ 20). Plaintiff makes a similar conclusory allegation in Paragraph 21 of the Complaint.

- "Plaintiff . . . was required as part of her employment to facilitate and support this process by coordinating interviews and maintaining communications with prospective applicants." (*Id.*, ¶ 45). Here, Plaintiff entirely fails to allege which of the defendants "required" her to do this.

- Plaintiff alleges that she "reported for work" at a location "where IMG was located" and that is "referred to as an SFE Energy location online," but does not allege who required her to report to work at this location. (*Id.*, ¶ 49).

- Plaintiff asserts that unidentified "individuals exercised control over Plaintiff's day-to-day activities." (*Id.*, ¶ 63).

- Plaintiff avers that she was hired "by an entity using the name 'IMG' to serve as a recruiter and administrative staff person." (*Id.*, ¶ 69).

Plaintiff's allegations pertaining to her theory that an employment relationship exists pursuant to the agency doctrine are equally conclusory. For instance, the Complaint states:

- "At all times material hereto, Defendants acted by and through their authorized agents [and/or] servants acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business." (*Id.*, ¶ 128).

- "Plaintiff believes and therefore avers that Defendant's . . . agents knowingly created, allowed the creation of, and failed to correct an intimidating, hostile, and offensive working environment, which included sexual harassment against Plaintiff, and which culminated in Plaintiff's wrongful termination." (*Id.*, ¶ 135).

- "Defendant, by and through its agents and employees acted in their capacities as the managing agents of Defendant, Defendant ratified the conduct by doing nothing despite its knowledge of the unlawful conduct, and Defendant's conduct was intentional, willful and with reckless indifference to the rights of the Plaintiff." (*Id.*, ¶ 186).

Such conclusory allegations need not be accepted as true by the Court when deciding a motion to dismiss. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d. Cir. 2016) ("merely conclusory" allegations "are not entitled to the presumption of truth"); *see Doe v. McDonald's USA, LLC*, 504 F. Supp. 3d 360, 366-67 (E.D. Pa. 2020) (plaintiff fails to allege joint employment where, among other things, it was insufficient to allege that McDonald's "maintained significant control over . . . daily operations"); *Hewitt*, 355 F. Supp. 3d at 234 (plaintiff did not sufficiently plead joint employment where he did "not plausibly allege[] that Sunoco exercised significant control over him or that Sunoco and plaintiff's employer, BS Transportation, 'share or co-determine those matters governing essential terms and conditions of [his] employment.'"); *Sneberger v. Cruise411.com, Inc.*, 2:00-cv-03023, 2001 WL 322558, at *3 (E.D. Pa. Jan. 31, 2001) (granting motion to dismiss where plaintiff failed to allege single employer relationship because plaintiff "failed to show that Defendants TL Ventures and Rosenbluth Vacations were involved in Defendant Cruise411.com to such a degree that the three parties, in reality, constituted only one integrated enterprise").

Because Plaintiff has failed to allege specific facts to establish single employer/integrated enterprise or joint employer liability, under the *Anderson* Factors and/or the *Hewitt* Factors, or agency liability against the Movants, the Employment Based Discrimination Claims (in Counts One through Eight of the Complaint), fail to state a claim upon which relief may be granted.

Additionally, Plaintiff has not pled any facts to establish personal jurisdiction over SFE Energy, SFE Canada and/or Summit, further warranting dismissal under Fed. R. Civ. 12(b)(2). As stated, Summit and SFE Canada are Canadian companies, and SFE Energy is a Delaware company. *See* Section A, pp. 1-2. There are no specific allegations for this Court to extend personal jurisdiction over any of these entities. Other than summary legal conclusions and Plaintiff's

commingling of the entities, there are no factual allegations that Summit, SFE Canada and/or SFE Energy maintain an office in Pennsylvania; employ personnel in Pennsylvania; own, lease, or maintain real property in Pennsylvania; maintain bank accounts in Pennsylvania; pay taxes in Pennsylvania; or are registered to do business in Pennsylvania. Plaintiff's unsupported conclusory allegations and continuous commingling of the entities do not overcome the requirement to adequately plead that this Court has personal jurisdiction over foreign entities and do not establish the forum contacts necessary to support specific jurisdiction. *See, e.g., Talbert v. Am. Water Works Co., Inc.*, 538 F. Supp.3d 471, 483-86 (E.D. Pa. 2021).

## IV. CLAIMS FOR NEGLIGENCE AND INTENTIONAL TORTS ARE BARRED UNDER STATE LAW.

According to the Pennsylvania Workers' Compensation Act ("PWCA"), at 77 Pa. Stat. Ann. § 481(a):

> The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (2) or occupational disease as defined in section 108.

Hence, Plaintiff's claims for negligent infliction of emotional distress (Count Three) and negligence (Count Five) are barred by the PWCA. *See Imboden v. Chowns Communications*, 182 F. Supp. 2d 453, 456-57 (E.D. Pa. 2002); *see also McGrenaghan v. St. Denis School*, 979 F. Supp. 323, 329 (E.D. Pa. 1997). Additionally, for the same reasons, Plaintiff's claim for intentional infliction of emotional distress ("IIED") (Count Four) is preempted by the PWCA. *See Rorrer v. Cleveland Steel Container*, 712 F. Supp. 2d 422, 436 (E.D. Pa. 2010) ("IIED claims are generally preempted by the PWCA.").

With regard to IIED claims, there is an exception whereby a plaintiff can recover from a defendant for "'injuries caused by an act of a third party [including co-workers] intended to injure the employee because of reasons personal to him, and not directed against her as an employee or because of his employment.'" *Rorrer*, 712 F. Supp. 2d at 436 (citation omitted). However, Plaintiff's IIED claim does not fall within this exception. Plaintiff alleges that Mr. Bland was acting within the scope of his employment, and, notably, Plaintiff asserts that Mr. Bland harassed her within the scope of his employment. (*See* Complaint, ¶¶ 14, 136, 139, 203, 204, 215, and 217). Plaintiff also asserts that Mr. Bland "target[ed] [other] female employees for sexual harassment." (*Id.* ¶¶ 112-113). The IIED claim is thereby pled in a manner to fall outside the personal animus exception to preemption under the PWCA. *See Rorrer*, 712 F. Supp. 2d at 437 ("'If the third party would have attacked a different person in the same position as the injured employee, the attack falls outside the [personal animus] exception.'") (citation omitted).

Just grounds exist to dismiss Plaintiff's claims in Counts Three through Five because they are preempted by the PWCA.

## V. <u>THE PHRA PREEMPTS PLAINTIFF'S CLAIMS OF RETALIATION/ COERCION AND NEGLIGENT TRAINING, SUPERVISION, AND RETENTION.</u>

Section 12(b) of the PHRA states that "as to acts declared unlawful by section five of this act the procedure herein provided shall, when invoked, be exclusive and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the complainant concerned."

This District's decision in *Miller-Nuss v. Service America Corp.*, No. 2:89-cv-05416, 1990 WL 2801 (E.D. Pa. Jan. 16, 1990) addresses the scope of the bar to common law claims under the PHRA and applies on all fours to this matter. In *Miller-Nuss*, the plaintiff brought, among others, a claim under Title VII and a claim for wrongful discharge under Pennsylvania state law. 1990

WL 2801, at *1. The court dismissed the plaintiff's claim for wrongful discharge because "she had available to her a state law cause of action under the" PHRA. *Id.* at *2. For good measure, the court also noted that the plaintiff could not sustain a wrongful discharge claim based on a violation of a public policy because "in Pennsylvania, no common law wrongful discharge action based on public policy grounds is available to a plaintiff where the public policy asserted is embodied in the [PHRA], because of the availability of other remedies under state law." *Id.*

In *Miller-Nuss*, the plaintiff's wrongful discharge claim relied upon the same facts upon which her PHRA claim was based. *Id.* Similarly, here, Plaintiff's retaliation and coercion claim is reliant upon the same assertions as her Title VII and PHRA claims. By way of example, in Paragraph 233 of the Complaint, Plaintiff asserts that "Defendant's" allegedly retaliatory conduct violated Title VII and the PHRA.

Plaintiff's claim for negligent training, supervision, and retention in Count Seven, is also based upon the same facts alleged concerning sexual harassment and coercion. (Complaint, ¶¶ 248, 250, 252 and 253). Based upon the same rationale set forth in *Miller-Nuss*, the PHRA preempts Count Seven because this claim is based upon the same facts that underly Plaintiff's PHRA claim. *See Booker v. National R.R. Passenger Corp.*, 880 F. Supp. 2d 575, 586 (E.D. Pa. 2012) ("The PHRA preempts negligent supervision claims if a plaintiff relies on 'the same set of facts' to support both claims.") (citations omitted).

Dismissal of the claims for coercion/retaliation and negligent training, supervision, and retention, in Counts Six and Seven, is appropriate because those causes of action are preempted by the PHRA. *See Harrison v. Health Network Laboratories Limited Partnerships*, 659 Pa. 537, 551 (Pa. 2020) ("[W]hen an aggrieved party chooses to pursue a remedial action under the PHRA,

he or she is bound exclusively to the PHRA's procedures, including the exhaustion of administrative remedies, and bound to the result.").

## VI. UNDER PENNSYLVANIA LAW, PLAINTIFF HAS NO COGNIZABLE CLAIM AGAINST THE MOVANTS FOR CORPORATE NEGLIGENCE/DIRECT LIABILITY.

As observed in *Yonkauske v. Lehigh Gorge Scenic Railway*, No. 3:24-cv-02044, 2025 WL 2991316, at *9 n.6 (M.D. Pa. Oct. 23, 2025), direct corporate negligence claims do not extend to non-healthcare related corporate entities under Pennsylvania law. Indeed, according to *Thompson v. Nason Hosp.*, 527 Pa. 330, 339 (Pa. 1991),"[c]orporate negligence is a doctrine under which the hospital is liable if it fails to uphold the proper standard of care owed the patient, which is to ensure the patient's safety and well-being while at the hospital." *See also Estate of Goldberg v. Nimoityn*, 193 F. Supp. 3d 482, 492 (E.D. Pa. 2016) (holding that a "hospital may be held directly liable for its own 'institutional' negligence if it fails in its nondelegable duties to uphold the proper standard of care it owes to a patient.").

Plaintiff avers that "Defendants function primarily as a broker, marketer, and trader of energy commodities, deriving revenue from the procurement and enrollment of customers into energy supply agreements." (Complaint, ¶ 32). Because Summit, SFE Energy, SFE Canada and SFE Pennsylvania are not alleged to be hospitals or healthcare-related entities, no legal grounds exist to sue the Movants based on the doctrine of corporate negligence/direct liability.

## VII. CLAIMS FOR FRAUD AND NEGLIGENT MISPRESENATION FAIL FOR LACK OF SPECIFICITY UNDER FED. R. CIV. P. 9(B) OR OTHERWISE FAIL TO STATE A CLAIM UNDER FED. R. CIV. P. 12(B)(6).

Fed. R. Civ. P. 9(b) commands that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Pursuant to this heightened pleading standard, plaintiffs must "'plead with particularity the 'circumstances' of the

alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior.'" *U.S. ex rel. Budike v. PECO Energy,* 897 F Supp.2d 300, 316 (E.D. Pa. 2012) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir.1984)). This requires a description of the "'who, what, when, where and how' of the events at issue." *In re Rockefeller Ctr. Props., Inc. Secs. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) (internal quotation marks and citation omitted); *overruled on other grounds by Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

Fed. R. Civ. P. 9(b) is generally considered satisfied when a defendant has "fair notice" of the charges against it. *United States v. Kensington Hosp.*, 760 F. Supp. 1120, 1126 (E.D. Pa. 1991). "[T]he Third Circuit has cautioned against focusing too narrowly on Rule 9(b)'s particularity language." *Mendelsohn, Drucker & Associates v. Titan Atlas Mfg., Inc.*, 885 F. Supp. 2d 767, 786 (E.D. Pa. 2012) (citing *Seville Indus. Mach. Corp.*, 742 F.2d at 791)). "Instead, a court should focus on whether the complaint 'adequately describes the nature and subject of the alleged misrepresentation.'" *Mendelsohn*, 885 F. Supp. 2d at 787 (citing *Seville Indus. Mach. Corp.*, 742 F.2d at 791).

However, here, Plaintiff fails to differentiate between the Movants, which are separate corporate entities, and, instead, refers to them generally as "SFE" or "SFE Energy." (Complaint, ¶¶ 11-13). Plaintiff also confusingly groups these separate corporate entities together, in an overgeneralized and unidentifiable manner, without specifically identifying which one engaged in the conduct alleged. (*Id.*, ¶¶ 15, 16, 18-22, 32, 43 and 44). In the count for fraud, Plaintiff repeatedly refers generally to the conduct of "Defendants." (*Id.*, ¶¶ 275-286). By doing so, the Movants are unable to identify the who, what, when and where of the alleged fraud claim.

There appears to be some disagreement among the District Courts in the Third Circuit as to whether Fed. R. Civ. P. 9(b) applies to claims based on negligent misrepresentation. *See McLaughlin v. Bayer Corporation*, 172 F. Supp. 3d 804, 829 (E.D. Pa. 2016) (citing cases). Nonetheless, in *McLaughlin,* because the allegations underlying fraud and negligent misrepresentation were virtually the same, and failed to plead the date, place or time of the fraud (or to substantiate the allegations in some other manner), the negligent misrepresentation count was dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Id.*

Likewise, Plaintiff's negligent misrepresentation claim is based upon the same allegations concerning the fraud assertions concerning enrollment into the energy contract. (Complaint, ¶¶ 288-293; and ¶¶ 295 and 296). As is the case with the fraud claim, Plaintiff makes claims concerning the conduct of "Defendants" generally, without any identification of the corporate party responsible for making the misrepresentations concerning enrolling Plaintiff into the contract. Without those particularized assertions, under the rationale expressed in *McLaughlin*, the Complaint lacks precision as to the alleged misrepresentation in order to state a claim under Fed. R. Civ. P. 12(b)(6).

Accordingly, Rules 9(b) and 12(b)(6) warrant dismissal of the claims for fraud and negligent misrepresentation, respectively.

## VIII. <u>PLAINTIFF'S COMPLAINT FAILS TO ASSERT FACTS SUFFICIENT TO STATE A CLAIM OF ALTER EGO LIABILITY.</u>

In Count One of the Complaint, Plaintiff alleges that "Defendants, including their agents, supervisors, managers, representatives, servants, employees, successors in interest, co-conspirators, and/or alter egos, engaged in a pattern and practice of unlawful sexual harassment by subjecting Plaintiff to sexual discrimination, disparate treatment and retaliation in violation of Title VII." (Complaint, ¶ 175).

To pierce the corporate veil, Pennsylvania law requires a "very high showing of domination and control." *See Jiffy Lube Intern., Inc. v. Jiffy Lube of Pennsylvania, Inc.*, 848 F. Supp. 569, 580 (E.D. Pa. 1994). "[T]he party seeking to pierce the corporate veil on an alter-ego theory must establish 'that the controlling corporation wholly ignored the separate status of the controlled corporation and so dominated and controlled its affairs that its separate existence was a mere sham.'" *Id.* at 580 (quoting *Culbreth v. Amosa (Pty) Ltd.*, 898 F.2d 13, 14 (3d Cir.1990)). "Alternatively, it is necessary to show that 'the controlled corporation acted robot-or puppet-like in mechanical response to the controller's tugs on its strings or pressure on its buttons.'" *Jiffy Lube Intern., Inc.*, 848 F. Supp. at 580 (quoting *Culbreth*, 898 F.2d at 15). The relevant facts for piercing under an alter ego theory include: "(a) insufficient capitalization; (b) intermingling of funds; (c) other officers and directors were not functioning; (d) failure to observe corporate formalities; (e) failure to pay dividends; (f) the fact that the corporation is a facade for the operations of the dominant shareholder." *Thompson v. Glenmede Trust Company*, No. 92-5233, 1993 WL 197031, at *11 (E.D. Pa. June 8, 1993); *see also Village at Camelback Property Owners Assn. Inc. v. Carr*, 371 Pa.Super. 452, 538 A.2d 528, 535 (1988); *aff'd*, 524 Pa. 330, 572 A.2d 1 (Pa. 1990).

Plaintiff makes no assertions about: (1) alleged undercapitalization; (2) intermingling of corporate and personal affairs with regard to any of the defendants; (3) other officers not

functioning; or (4) failure to pay dividends. As to corporate formalities and an alleged "façade," Plaintiff's conclusory allegations do not particularize facts about whether, when or how Summit, SFE Energy, SFE Canada and/or SFE Pennsylvania, allegedly ignored corporate formalities and/or identify which ones, if any, were the dominant shareholder used to perpetrate a fraud. Plaintiff, instead, confusingly conflates all the defendants together without identifying which corporate entity engaged in the conduct alleged to establish alter ego liability. (Complaint, ¶¶ 2, 4, 5, 11, 13, 15-21, 33, 34, 47, 51 and 52). Plaintiff alleges that "each entity" has overlapping ownership without specifically identifying the specific corporate named defendant subject to that assertion. (*Id.*, ¶ 5). Plaintiff refers to "Defendants IMG and SFE" in allegations about "common ownership" (*Id.*, ¶ 17) and to Mr. Grichanik who is falsely alleged to be an officer of "SFE Energy". (*Id.*, ¶ 33). However, due to the confusing and contradictory references to the defendants throughout the Complaint, such allegations lack the requirement of particularity mandated under Rule 9(b).

Plaintiff thereby fails to allege sufficient facts that, even if accepted as true, would be sufficient to pierce the corporate veil against the Movants, and has not stated a claim for alter ego liability.

## IX. <u>NO SUPPLEMENTAL JURISDICTION EXISTS OVER THE ENERGY CONTRACT CLAIMS OR THE IDENTITY THEFT CLAIM BECAUSE THOSE CAUSES OF ACTION ARE UNRELATED TO THE FACTS ASSERTED AS THE BASIS FOR FEDERAL QUESTION JURISDICTION.</u>

28 U.S.C.A. § 1367(a) states as follows:

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder of intervention of additional parties.

***

28 U.S.C.A. § 1367(c)(3) and (4) provide:

> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> ***
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Plaintiff asserts that federal question jurisdiction exists based exclusively upon the cause of action in Count I, under "Title VII, 42 U.S.C. §§ 2000e-2, et seq." (Complaint, ¶¶ 24, and 172-189, referenced herein, at times, as "Federal Employment Claim"). However, supplemental jurisdiction has been rejected where "state claims [are] totally unrelated to a cause of action under federal law." *Lyon v. Whisman*, 45 F.3d 758, 761 (3d Cir. 1995) (citation omitted). In *Lyon*, "[t]he only link between [plaintiff's] FLSA and state law claims [was] the general employer-employee relationship between the parties." *Id.* at 762. This supposed nexus was ruled to be insufficient because "[t]he facts relevant to [plaintiff's] state law…claims…were quite distinct," and "…it [was] clear that there [was] so little overlap between the evidence relevant to the FLSA and state claims, that there [was] no 'common nucleus of operative fact' justifying supplemental jurisdiction over the state law claim." *Id.* at 763.

Similarly, here, Plaintiff's Federal Employment Claim is based upon factual assertions that are unrelated to the state law causes of action asserted for alleged unauthorized utility enrollment (*i.e.*, the three Energy Contract Claims) and for the Identity Theft Claim. By way of illustration, the Federal Employment Claim arises from supposed repeated and prolonged alleged acts of harassment and sex discrimination by Mr. Bland. (Complaint, ¶¶ 69-158). In contrast, the Energy

Contract Claims and Identity Theft Claim derive from a wholly separate circumstance concerning Plaintiff's claim that she was unwittingly enrolled as a customer. (*Id.*, ¶¶ 159-168). There is virtually no overlap between the distinct facts alleged as the grounds for liability for the Federal Employment Claim and these four state law causes of action. Accordingly, no supplemental jurisdiction exists over the Energy Contract Claims and the Identity Theft Claim.

## X. IN THE EVENT THE TITLE VII CLAIMS ARE DISMISSED AGAINST SUMMIT, SFE ENERGY AND SFE CANADA, NO SUPPLEMENTAL JURISDICTION WOULD REMAIN OVER ANY OF THE REMAINING STATE LAW CLAIMS AS AGAINST THOSE DEFENDANTS.

"Once a district court has dismissed all federal claims in a case, the court may, at its discretion, decline to exercise jurisdiction over remaining claims." *Jordan v. Staffing Plus, Inc.*, 315 F. Supp. 3d 844, 848 (E.D. Pa. 2018); *see also* 28 U.S.C. § 1367(c)(3). Accordingly, in the event this Court dismisses Plaintiff's Title VII claims against Summit, SFE Energy and SFE Canada, for failure to exhaust administrative remedies, just grounds would then exist to dismiss all the remaining state law causes of action asserted against them for lack of jurisdiction. *See Kahn v. American Heritage Life Ins. Co.*, 324 F. Supp. 2d 652, 657 (E.D. Pa. 2004) (declining to exercise supplemental jurisdiction over remaining state law claims after dismissing plaintiff's Title VII claim).

## XI. THE ENERGY CONTRACT AND IDENTITY THEFT CLAIMS SHOULD BE DISMISSED BECAUSE THEY ARE WITHIN THE PRIMARY JURISDICTION OF THE PENNSYLVANIA PUBLIC UTILITY COMMISSION.

Four of the Counts in the Complaint (Counts Nine, Ten, Eleven and the final unnumbered Count, *i.e.*, Identity Theft Claim) all relate to the same underlying allegation that Defendants enrolled Plaintiff in an energy supply contract without her authorization, otherwise known as "slamming." (Complaint, ¶¶ 159-161, 267-297, and 312-320). It is well-settled that these types of claims are squarely within the jurisdiction of the Pennsylvania Public Utility Commission ("PA

PUC") to adjudicate, not state or federal courts, and therefore, under the doctrine of primary jurisdiction, the Energy Contract and Identity Theft Claims should be dismissed.

"The doctrine of primary jurisdiction, despite its name, does not implicate the jurisdiction of a federal court. Rather, it is a principle of judicial administration designed to achieve coordination between administrative agencies and the courts." *Talbert*, 538 F. Supp. 3d at 486 (citing *P.R. Mar. Shipping Auth. v. Valley Freight Sys., Inc*., 856 F.2d 546, 549 (3d Cir. 1988) (citing *Cheyney State Coll. Fac. v. Hufstedler*, 703 F.2d 732, 736 (3d Cir. 1983))). The doctrine allows the court to "refer a matter to the relevant agency whenever enforcement of the claim requires the resolution of issues which have been placed within the special competence of an administrative body." *U.S. ex rel. Int'l Brotherhood of Elec. Workers, Loc. Union No. 98 v. Farfield Co.*, No. 09-4230, 2017 WL 4269048, at *5 (E.D. Pa. Sept. 26, 2017) (internal quotation marks and citation omitted).

The following four factors—called *Baykeeper* factors—determine whether the court should refer a matter to an administrative agency: "(1) Whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) Whether the question at issue is particularly within the agency's discretion; (3) Whether there exists a substantial danger of inconsistent rulings; and (4) Whether a prior application to the agency has been made." *Baykeeper v. NL Indus. Inc.*, 660 F.3d 686, 691 (3d Cir. 2011). If these factors point toward application of the doctrine, "a court will either dismiss the matter without prejudice or stay its proceedings in order to give the parties a reasonable opportunity to refer the matter to an agency for an administrative ruling." *Int'l Brotherhood*, 2017 WL 4269048, at *5.

With respect to the first two *Baykeeper* standards, questions regarding unauthorized enrollments by electric generation suppliers are clearly within the PA PUC's particular field of expertise and discretion. Pennsylvania's Electricity Generation Customer Choice and Competition Act ("Competition Act"), 66 Pa. C.S. §§ 2801-2815 restructured Pennsylvania's electricity industry by allowing retail customers to purchase electricity directly from licensed electric generation suppliers rather than their local utility. *HIKO Energy, LLC v. Pa. PUC*, 163 A.3d 1079, 1082 n.1 (Pa. Cmwlth. 2017), *aff'd*, 209 A.3d 246 (Pa. 2019). The Competition Act requires all electric generation suppliers wishing to do business in the Commonwealth to be licensed by the PA PUC and requires them to abide by the PA PUC's regulations. *See*, 66 Pa. C.S § 2809 and *Blue Pilot Energy, LLC v. Pa. PUC,* 241 A.3d 1254, 1260 (Pa. Cmwlth. 2020). Pursuant to the Competition Act, the PA PUC has promulgated extensive regulations governing the activities of electric generation suppliers in Pennsylvania and prohibiting the unauthorized enrollment of customers in energy supply contracts without their consent. *See, e.g.*, 52 Pa. Code §§ 54.171-180, and 111.1-111.14.

Notably, SFE Pennsylvania is licensed by the PA PUC as an electric generation supplier. *See*, *License Application of SFE Energy Pennsylvania, Inc. d/b/a SFE or SFE Energy for Approval to Offer, Render, Furnish or Supply Electricity or Electric Generation Services as a Supplier of Retail Electric Power*, PA PUC Docket Number A-2013-2353576 (Order entered August 15, 2013). To the extent that Plaintiff seeks to assert a claim that her energy supply service was enrolled with a supplier without her consent, Plaintiff is required to bring such a claim against SFE Pennsylvania to the PA PUC for resolution before bringing a claim before this Court.

It should be noted that the PA PUC has broad powers to enforce the Public Utility Code and its own regulations, including the power to investigate companies under its jurisdiction, hear

complaints brought by customers, order refunds, and impose civil penalties for violations. *See* 66 Pa. C.S. §§ 501-502, 701-703, 1301-1312, and 3301. The Pennsylvania Supreme Court has recognized that "no principle has become more firmly established in Pennsylvania law than that the courts will not originally adjudicate matters within the jurisdiction of the PUC." *Borough of Lansdale v. Phila. Elec. Co.*, 170 A.2d 566, 567 (Pa. 1961); *see Chester Cnty. v. Phila. Elec. Co.*, 218 A.2d 331, 332-33 (Pa. 1966); *Einhorn v. Phila. Elec. Co.*, 190 A.2d 569, 634 (Pa. 1963); *Fogelsville & Trexlertown Elec. Co. v. Pa. Power & Light Co.*, 114 A. 822, 823-24 (Pa. 1921); *see also Byer v. Peoples Nat. Gas Co.*, 380 A.2d 383, 386 (Pa. Super. 1977); *Bell Tele. Co. of Pa. v. Sanner*, 375 A.2d 93, 95 (Pa. Super. 1977); *Elkin v. Bell Tele. Co.*, 372 A.2d 1203, 1205 (Pa. Super. 1977).

Pennsylvania courts and the PA PUC have repeatedly held that the PA PUC has jurisdiction to investigate allegations of breach of contract and/or fraudulent marketing practices, including, at times, "slamming", filed against electric generation suppliers and order remedial measures and impose penalties against such suppliers. *See, e.g.*, *Blue Pilot Energy, LLC*, 241 A.3d at 1260-61 (finding that a contract dispute that bears upon violations of regulations was within purview of PA PUC); *HIKO Energy, LLC*, 163 A.3d at 1100 (rejecting contention by energy supplier that PA PUC did not have jurisdiction to enforce regulations about billing, disclosures statements and marketing and sales activities); *Commonwealth v. IDT Energy, Inc.*, PA PUC, Docket No. C-2014-2427657, filed Dec. 18, 2014 (approving imposition of penalties against energy supplier for violation of PA PUC regulations); *Pa. Pub. Util. Comm'n v. Liberty Power Holdings, LLC*, PA PUC, Docket No. M-2019-2568471, Opinion and Order entered Apr. 15, 2021; *Pa. Pub. Util. Comm'n v. Energy Servs. Providers, Inc.*, PA PUC Docket No. M-2013-2325122, Opinion and Order entered Oct. 2, 2014 (approving imposition of penalties against energy supplier for violation

of PA PUC regulations); *Pa. Pub. Util. Comm'n v. MXenergy Elec., Inc*., PA PUC Docket No. M-2012-2201861, Opinion and Order entered Aug. 29, 2013 (approving imposition of penalties against energy supplier for violation of PA PUC regulations). The PA PUC also routinely adjudicates complaints filed by individual customers against their electric generation suppliers for alleged enrollment without proper authorization. *See, e.g.*, *Novak v. Palmco Energy PA LLC d/b/a Indra Energy*, PA PUC Docket No. F-2024-3046076, Final Order entered Sept. 15, 2025.

Pennsylvania courts have routinely applied the doctrine of primary jurisdiction to order claims that are within the jurisdiction of the PA PUC be transferred to the PA PUC for adjudication. The doctrine of primary jurisdiction allows a trial court to transfer a case to the proper administrative agency where both the court and the agency have subject matter over the dispute, and where the subject matter is within the agency's jurisdiction and where it requires special competence. *Elkins v. Bell Tel. Co. of Pa.,* 420 A.2d 371, 377 (Pa. 1980). The doctrine of primary jurisdiction requires "judicial abstention in cases where protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme." *United States v. Philadelphia National Bank*, 374 U.S. 321, 353 (1963).

Because the PA PUC licenses electric generation suppliers (including one of the named defendants in this case), is statutorily charged with enacting and enforcing regulations governing electric supplier's enrollment of customers, and has historically undertaken investigations of electric generation suppliers and adjudicated customer complaints against such suppliers, under the *Baykeeper* standards, primary jurisdiction over Plaintiff's Energy Contract and Identity Theft Claims (the latter claim being fairly read to be based upon enrollment allegations) lies with the PA PUC. Accordingly, additional grounds exist to dismiss Plaintiff's Energy Contract Claims and Identity Theft Claim under that jurisdictional doctrine.

## CONCLUSION

For the foregoing reasons, Movants respectfully request that this Court grant their Motion to dismiss Plaintiff's Complaint.

STEVENS & LEE, P.C.

Dated: July 31, 2026

By: /s/ Theresa M. Zechman

Theresa M. Zechman, Esquire
51 South Duke Street
Lancaster, PA 17602
Telephone: 717-399-6644
Fax: 610-236-4185
Email: theresa.zechman@stevenslee.com

Mallory C. McRae, Esquire
1500 Market Street
East Tower, Suite 1800
Philadelphia, PA 19102
Telephone: 215-751-1944
Fax: 610-371-7924
Email: mallory.mcrae@stevenslee.com

*Attorneys for Defendants, Summit Energy, Inc., SFE Energy, Inc., SFE Energy Canada, Inc., and SFE Energy Pennsylvania, Inc.*

**CERTIFICATE OF SERVICE**

I, Mallory C. McRae, hereby certify that a true and correct copy of the within Memorandum of Law in Support of Motion to Dismiss Complaint was filed electronically and was made available for viewing and downloading via the Court's CM/ECF system, and all counsel of record was served via the Court's CM/ECF system notification.

Dated: July 31, 2026

s/*Mallory C. McRae*
Mallory C. McRae