**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BRIDGET MCMULLAN, Plaintiff, | : | |
| v. | : | Civil No.: 5:26-cv-03004 |
| IMG CORPORATIONS, INC., et al., Defendants. | : | |

**MEMORANDUM OPINION**

**Gallagher, J.** **August 27, 2026**

## I. INTRODUCTION

Plaintiff Bridget McMullan ("Plaintiff" or "McMullan") commenced this action against her former employer IMG Corporations, Inc. ("IMG"), SFE Energy, Inc., SFE Energy Canada, Inc., SFE Energy Pennsylvania, Inc., Summit Energy, Inc. (collectively referred to as "SFE" or the "SFE entities") and her supervisor Jeremy Bland ("Bland") (collectively the "Defendants") for unlawful employment practices, including sexual harassment, hostile work environment, retaliation, and constructive discharge, in violation of Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act ("PHRA"). Currently before the Court is Defendants' Motion to Dismiss. For the reasons set forth below, the Court concludes that dismissal is not warranted at this stage.

## II. FACTUAL BACKGROUND

Plaintiff initiated this employment action on May 4, 2026. She alleges that she was hired on November 13, 2023, through an entity operating as "IMG" to perform recruiting and administrative work from the Allentown, Pennsylvania office. *See* Compl. ¶¶ 69-70. Although her

employment was presented as employment with IMG, Plaintiff contends that she was, in substance, working for SFE. According to the Complaint, Plaintiff reported to and took direction from SFE personnel, who controlled her day-to-day activities, and her recruiting work was directed toward placing candidates into positions selling SFE-affiliated energy products. *Id.* ¶¶ 42-45, 61-63, 69-74. Plaintiff further alleges that her direct supervisor, Jeremy Bland, was an SFE employee who was responsible for establishing the Allentown office. *Id.* ¶¶ 38, 74.

Plaintiff alleges that IMG and the SFE entities operated with overlapping management and centralized control of labor relations, and that one individual, Edwin Grichanik, held himself out as the owner and principal decision-maker of both IMG and SFE. *Id.* ¶¶ 17-21, 33-38. The Complaint further asserts that the Allentown location where Plaintiff worked was publicly identified as an SFE office, notwithstanding that she had been recruited under the IMG name. *Id.* ¶ 49. Plaintiff further alleges that this overlapping structure obscured which corporate entity exercised actual control over her employment. *Id.* ¶¶ 47–68.

Plaintiff alleges that while exercising supervisory authority over her, Bland subjected her to escalating sexual harassment and unwanted sexual conduct. *Id.* ¶¶ 75-100. She further alleges that Defendants were aware of Bland's conduct toward female employees and that, despite this knowledge, the conduct continued. *Id.* ¶¶ 112-116.

On April 19, 2024, after Plaintiff allegedly declined Bland's attempt to discuss personal matters, Bland became irate, told Plaintiff that he was terminating her contract, ordered her to leave the office, and physically took Plaintiff's phone and disconnected her call when she attempted to contact IMG's Vice President, Carissa Catalfamo ("Catalfamo"). *Id.* ¶¶ 117-121. Plaintiff also

alleges that her corporate email account was deactivated and her GroupMe communications were erased shortly thereafter. *Id.* ¶ 122.

Plaintiff further alleges that, following her termination, she discovered that her personal information had been used without authorization to enroll her in a third-party energy-supply contract associated with Defendants' business. *Id.* ¶¶ 159-162. According to the Complaint, Catalfamo requested Plaintiff's utility bill on February 19, 2024, representing that it was needed for promotional purposes and assuring Plaintiff that her private information would not otherwise be used. *Id.* ¶ 168. Plaintiff alleges Defendants nevertheless used that information without her consent to enroll her in the energy contract, resulting in an approximately $700 cancellation fee. *Id.* ¶¶ 159-161.

## III. LEGAL STANDARD

"To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). A court is "not compelled to

accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Wheeler v. Wheeler*, 639 F. App'x 147, 149 (3d Cir. 2016) (quoting *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013)).

## IV. DISCUSSION

### A. Rule 8(a)(2)

Defendants first contend that dismissal of all claims is warranted because the Complaint fails to comply with Rule 8(a)(2). *See* Def.'s Mot. to Dismiss, at 3. They argue that the pleading exemplifies two forms of improper shotgun pleadings. *Id.* at 5. First, Defendants argue that each count incorporates all preceding paragraphs. *Id.* Next, Defendants contend that the Complaint asserts multiple claims against multiple Defendants without specifying which Defendant is responsible for which acts or omissions. *Id.* According to Defendants, "it is impossible to ascertain from the Complaint what conduct is being attributed against which particular corporate Defendant." *Id.* They emphasize that Plaintiff frequently refers to "Defendants" collectively, and at times to "Defendant" singularly, without clarifying which entity is being accused, leaving Defendants to guess whether allegations pertain to them. *Id.*

Plaintiff counters that the Complaint adequately pleads a single integrated enterprise or joint-employer theory. *See* Pl.'s Resp. in Opp. at 4. Plaintiff points to allegations that Defendants IMG and SFE share overlapping ownership executives, centralized control of labor relations, a common CEO who held himself out as controlling both entities, shared office space and phone numbers, and a business structure allegedly designed to blur the lines between the entities. *Id.* Given these allegations, Plaintiff argues that collective reference to "Defendants" is not a pleading defect, but a necessary consequence of the theories being pursued. Plaintiff further notes that incorporation of prior paragraphs does not, standing alone, create a shotgun-pleading problem, and

even if the Court finds the Complaint imprecise, the appropriate remedy is repleading, not dismissal. *Id.* at 6-7.

Rule 8(a)(2) requires a "short and plain statement" showing entitlement to relief and providing each Defendant fair notice of the claims and grounds upon which they rest. Although the Complaint may not be a model of clarity, the Court does not find it so vague or unintelligible as to warrant dismissal. The Complaint identifies the nature of the claims asserted, provides a factual narrative, and alleges that the corporate Defendants operated as a unified enterprise. The allegations cited – overlapping ownership, shared executives, centralized control of labor relations, common leadership, and shared facilities – are sufficient at this stage to explain why Plaintiff attributes conduct to the entities collectively. Accordingly, the Court concludes that dismissal under Rule 8(a)(2) is not warranted. Although the Complaint contains collective references and incorporates prior allegations, it provides sufficient notice of the claims and the theories asserted. The Court is not persuaded by Defendant's argument and thus, dismissal is not warranted.

**B. Exhaustion**

Defendants next contend that Plaintiff's Title VII and PHRA claims against Summit Energy, Inc. ("Summit"), SFE Energy, Inc. ("SFE Energy"), and SFE Energy Canada, must be dismissed because Plaintiff failed to exhaust administrative remedies as to those entities. *See* Def.'s Mot. to Dismiss, at 7. Defendants argue that the Court may consider EEOC documents at the Rule 12 stage, and Plaintiff's Charge of Discrimination identifies only "IMG Corporations/Summit Family Energy" as her employer. *Id.* at 9. According to Defendants, neither the Charge nor the accompanying narrative mentions Summit, SFE Energy, or SFE Canada as respondents. Defendants further assert that the 300-day limitations period for filing a charge has expired as to those entities, given Plaintiff's alleged termination date of April 19, 2024. *Id.* Thus, even if Plaintiff

attempted to amend her Charge now, Defendants contend that exhaustion would be time-barred. *Id.* In sum, according to Defendants, because Plaintiff did not name the SFE entities, did not describe them, and did not identify them as employers, she cannot pursue Title VII or PHRA claims against them in this litigation. *Id.*

Plaintiff, however, argues that dismissal is not warranted because the *Glus* identity-of-interest exception applies. *See* Pl.'s Resp. in Opp. at 7. Under *Glus v. G.C. Murphy Co.*, 562 F.2d 880 (3d Cir. 1977), a plaintiff may proceed against an unnamed entity if four considerations favor treating the unnamed party as having been effectively included in the administrative process. The four factors include: (1) Whether the unnamed party's role could reasonably have been ascertained; (2) Whether the interests of the named and unnamed entities are so similar that inclusion of the unnamed entity in the administrative proceedings would have been unnecessary; (3) Whether the absence of the unnamed entity resulted in actual prejudice; and (4) Whether the unnamed entity represented to the complainant that its relationship with the complainant was conducted through the named party.

First, Plaintiff contends that Defendants themselves created substantial confusion regarding the identity of her employer. *See* Pl.'s Resp. in Opp. at 8. The Complaint alleges that Defendants intentionally structured their operations to obscure which entity controlled the employment relationship; Plaintiff never received a paystub; and Defendants used overlapping business names, shared offices, shared phone numbers, and a common CEO. *Id.* 8-9. Plaintiff argues that she could not reasonably ascertain the correct corporate entity at the time she filed her Charge. Next, Plaintiff asserts that the interests of entities are identical. *Id.* at 10. As previously noted, the Complaint alleges common ownership, overlapping executives, centralized control of labor relations, interrelated operations, joint control over employment conditions, and agency

relationships among the entities. Plaintiff further alleges that IMG recruits workers who perform work for SFE, and SFE personnel trained and supervised Plaintiff. *Id.* at 10. These allegations, Plaintiff argues, establish a commonality of interest sufficient to satisfy the *Glus* test.

Plaintiff next argues that SFE cannot claim prejudice because the entities allegedly shared management, personnel, and operations, and therefore had actual or constructive notice of both the discriminatory conduct and EEOC proceeding. *Id.* at 11. Plaintiff alleges that Bland, her supervisor, an SFE employee, and the manager responsible for establishing the Allentown office, was directly involved in the underlying conduct and would have been aware of the administrative dispute. *Id.* Plaintiff next contends that SFE conducted its relationship with Plaintiff through IMG, representing IMG as the entity through which her employment would be administered. *Id.* at 13. Plaintiff alleges she was expressly told she would work "through IMG," even though she reported to SFE personnel. *Id.* Finally, Plaintiff argues that application of *Glus* presents factual questions inappropriate for resolution at the pleading stage.

Ordinarily, failure to name a respondent in an EEOC charge may bar suit against that entity. However, as Plaintiff correctly points out, the Third Circuit recognizes the identity-of-interest exception, which permits suit against unnamed parties where the four *Glus* factors support treating the unnamed entity as effectively included in the administrative process. *Schafer v. Bd. of Pub Educ.*, 903 F.2d 243, 252 (3d Cir. 1990); *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir. 1987). At the Rule 12(b)(6) stage, the Court must accept Plaintiff's allegations as true. Plaintiff alleges that Defendants intentionally structured their operations to obscure the identity of her employer, that she never received a paystub, that the entities shared ownership, executives, management, labor-relations control, office space, and phone numbers, and that SFE personnel

supervised her work. These allegations plausibly support the first two *Glus* factors: difficulty in ascertaining the correct employer and similarity of interests.

The Complaint also plausibly alleges that SFE had actual or constructive notice of the discriminatory conduct and the ensuing EEOC proceeding, given the alleged shared management and Bland's role. At this stage, Defendants cannot establish prejudice as a matter of law. Finally, Plaintiff alleges that SFE represented that her employment relationship would be conducted "through IMG," supporting the fourth *Glus* factor. The Court concludes that whether the entities shared officers, HR functions, counsel, or notice of the Charge are factual questions that cannot be resolved on the pleadings alone, and dismissal would improperly resolve disputed facts in Defendants' factor. The Court therefore denies Defendants' Motion to Dismiss the Title VII and PHRA claims on exhaustion grounds. Discovery will clarify the relationships among the entities, their notice of the Charge, and their involvement in the administrative process.

### C. Employment Relationship

Defendants next argue that the Complaint fails to state a claim because Plaintiff has failed to plead facts establishing an employment relationship between herself and Defendants. *See* Def.'s Mot. to Dismiss, at 9. They contend that Plaintiff relies on catch-all, conclusory allegations and has not alleged facts sufficient to support liability under any of the theories she invokes. *Id.* at 10. Defendants assert that Plaintiff does not allege which entity presented itself as her employer, whether any parent entity covered salaries or expenses, or which Defendant exercised control over her work. *Id.* at 10-14. They argue that the Complaint lacks the factual specificity necessary to plausibly allege that any of the Defendants employed Plaintiff. *Id.* Defendants also briefly contend that the Complaint pleads no facts supporting personal jurisdiction over SFE. *Id.* at 14-15.

Plaintiff counters that Defendants improperly isolate general allegations while ignoring the Complaint's specific factual assertions supporting her theories. *See* Pl.'s Resp. in Opp. at 15. Plaintiff correctly argues that she need not prove employment relationship at this stage, and that she must only allege facts permitting a reasonable inference that SFE exercised sufficient control over her work or operated as an integrated enterprise with IMG. *Id.* Plaintiff points to allegations that she worked from an Allentown, Pennsylvania office identified as an SFE location, performed work for SFE, reported to SFE personnel, and was supervised by SFE employee Jeremy Bland. *Id.* at 16. *See also* Compl. ¶¶ 14, 38, 74. Plaintiff further asserts that the Complaint alleges overlapping ownership, shared executives, centralized labor-relations control, interrelated operations, and joint supervision – facts, which, if true, could allow a reasonable jury to find a single-employer, joint-employer, or agency relationship. The Court agrees.

At the pleading stage, Plaintiff need only allege facts that, accepted as true, permit the reasonable inference of an employment relationship. The Complaint does more than recite legal conclusions. It alleges that Plaintiff worked in an SFE-identified office, performed work benefiting SFE, was trained and supervised by SFE personnel, and that IMG and SFE shared management, operations, and labor-relations control. These allegations plausibly support the inference that IMG and the SFE entities may have jointly controlled Plaintiff's employment or operated as an integrated enterprise.

As discussed, the precise nature of the relationships among IMG and SFE is a fact-intensive question that cannot be resolved on the pleadings alone. Discovery will clarify which entities exercised control over Plaintiff's work, supervised her, issued directives, or benefited from her alleged employment. Defendants' jurisdictional argument is likewise unpersuasive at this stage. Plaintiff alleges that she worked in Pennsylvania for an SFE-identified office, reported to SFE

personnel, and was supervised by an SFE manager. These allegations, taken as true, establish purposeful contacts with Pennsylvania and claims arising directly from those contacts.

### D. Negligence and Intentional Torts

Defendants argue that Plaintiff's negligence and intentional torts claims are barred by the exclusivity provisions of the Pennsylvania Workers' Compensation Act ("PWCA"). *See* Def.'s Mot. to Dismiss, at 15. Defendants contend that the PWCA provides the exclusive remedy for injuries arising out of the employment relationship, and Plaintiff's allegations place her claims squarely within the PWCA's preemptive reach. *Id.* Defendant relies on the PWCA's statutory language providing that an employer's liability under the Act is "exclusive and in place of any and all liability" for injuries arising in the course of employment. Defendant also argues that Plaintiff's claim for intentional infliction of emotional distress ("IIED") does not fall within the PWCA's personal-animus exception because the Complaint alleges that Bland acted within the scope of his employment and targeted multiple female employees, suggesting conduct directed at employees as employees rather than for personal reasons. *Id.* at 16.

Plaintiff responds that Defendants mischaracterize both the allegations and the governing law. *See* Pl.'s Resp. in Opp. at 17. She emphasizes that she pleads her claims in the alternative, noting that the true nature of the employment relationship, and whether any Defendant qualifies as her "employer," is uniquely within Defendants' possession and remains subject to discovery. *Id.* at 18. Plaintiff alleges that Defendants intentionally structured their operations to obscure the employing entity, and that Defendant cannot simultaneously dispute the existence of an employment relationship while invoking PWCA exclusivity. *Id.* Plaintiff further contends that the PWCA does not bar her claims because Pennsylvania courts recognize that sexual assault, and sexual misconduct constitute personal animus outside the employment relationship. *Id.* at 18-19.

Plaintiff also argues that the PHRA does not preempt her tort claims because those claims rest on independent common-law duties, such as Defendants' alleged failure to protect her from Bland's foreseeable sexual misconduct, which exist regardless of whether she ultimately proves discrimination. *Id.* at 19.

The Court concludes that, at the pleading stage, the PWCA preemption cannot be resolved as a matter of law. PWCA exclusivity applies where the defendant is the employer, and the plaintiff plausibly alleges uncertainty regarding the identity of her employer – an issue that cannot be resolved in this matter without discovery. If it were undisputed that Defendants were Plaintiff's employer, her claims might arguably fall within the PWCA's exclusivity provision. But, as discussed, the Complaint alleges substantial confusion, allegedly created by Defendants, regarding which entity employed Plaintiff. And even assuming an employment relationship, Plaintiff has plausibly alleged facts supporting the PWCA's personal-animus exception. Plaintiff's allegations, including Bland's alleged sexual assault and personal targeting, are sufficient to invoke the exception at this stage. In sum, at this stage, the Court cannot resolve whether PWCA preemption applies without first determining the nature of the employment relationship, a fact-intensive inquiry that requires discovery. Given the factual dispute regarding the employment relationship, and the scope of Defendants' control, dismissal would improperly resolve contested issues in Defendants' favor.

**E. PHRA Preemption**

Defendants next argue that Plaintiff's claims for retaliation/coercion and negligent training, supervision, and retention are preempted by the PHRA because they arise from the same facts underlying Plaintiff's PHRA discrimination and retaliation claims. *See* Def.'s Mot. to Dismiss, at 16. Relying on *Millis-Nuss v. Service America Corp.*, 1990 WL 2801 (E.D. Pa. Jan. 16, 1990),

Defendants contend that where a common-law claim is based on the same alleged discriminatory conduct, the PHRA provides the exclusive remedy. *Id.* at 16-17. Defendants also assert that the negligent training, supervision, and retention claim repackages Plaintiff's sexual harassment allegations and therefore fails squarely within the PHRA preemption. *Id.* at 17.

Plaintiff responds that Defendants misapply the PHRA's exclusivity provision and misconstrue the Complaint. *See* Pl.'s Resp. in Opp. at 19. Plaintiff emphasizes that she pleads her claims in the alternative because Defendants deliberately structured their operations in a way that leaves the existence and scope of any employment relationship subject to discovery. *Id.* Plaintiff again argues that Defendant cannot simultaneously deny being her employer while invoking PHRA exclusivity. *Id.* She further contends that her claims rest on independent duties, such as Defendants' alleged failure to protect her from Bland's foreseeable sexual misconduct, that exist regardless of discrimination. *Id.* at 20. The Court finds Plaintiff's arguments persuasive.

Here, Plaintiff alleges that Defendants knew of Bland's prior sexual misconduct, failed to implement adequate supervisory or reporting mechanisms, and permitted unsafe working conditions. These allegations plausibly state a negligence theory that is analytically distinct from discrimination: Plaintiff could prevail on negligent supervision even if she failed to prove discriminatory intent. Moreover, as previously noted, the nature of the employment relationship remains disputed, and PHRA exclusivity cannot attach until that factual question is resolved. Accordingly, dismissal at this stage is not appropriate.

**F. Corporate Negligence and Direct Liability**

Defendants argue that Plaintiff's corporate negligence claim must be dismissed because Pennsylvania recognizes corporate negligence only in the healthcare context. *See* Def.'s Mot. to Dismiss, at 18. Defendants contend that corporate negligence is a doctrine limited to hospitals and

other entities with non-delegable duties to ensure patient safety. *Id.* Because Plaintiff alleges that Defendants operate as energy-commodity brokers and marketers, not healthcare providers, Defendants argue that no legal basis exists for a corporate negligence claim. *Id.*

Plaintiff counters that Pennsylvania law does not categorically limit corporate negligence to healthcare entitles. *See* Pl.'s Resp. in Opp. at 20. Plaintiff cites *Williams v. EMC Mortgage Corp*., 2013 WL 1874952 (E.D. Pa. May 3, 2013), where the court rejected a bright-line rule restricting corporate negligence to hospitals. *Id.* Plaintiff also relies on *Scampone v. Highland Park Care Ctr., LLC*, 57 A.3d 582 (Pa. 2012), in which the Pennsylvania Supreme Court addressed the scope of corporate negligence and emphasized that the existence of a duty turns on the *Althaus* factors, not the industry in which the defendant operates. *Id.* at 21.

Plaintiff argues that the factors support recognition of a duty here because Defendant allegedly: jointly employed Plaintiff and controlled her working conditions; supervised her through Bland, an SFE employee responsible for the Allentown office; knew of Bland's prior sexual misconduct toward female employees; and failed to intervene or implement adequate policies, reporting procedures, or corrective action. *Id.* at 21-22. Plaintiff contends that the claim alleges direct institutional negligence, not merely derivative liability for Bland's conduct. *Id.*

Courts in Pennsylvania have declined to limit the doctrine exclusively to healthcare entities. *See Williams*, 2013 WL 1874952 at 7-8. *Williams* expressly rejected such a categorical limitation, and *Scampone* clarified that the existence of a duty depends on the *Althaus* factors, which apply broadly. *Id.* ("After *Scampone*, it is clear that [prior case law] should not be read to limit the corporate negligence cause of action strictly to hospitals"). Instead, the Court must determine if a corporate negligence claim is viable by determining if Defendant owes a duty of care to Plaintiff by applying the factors stated in the Pennsylvania Supreme Court's decision in

*Althaus v. Cohen*, 562 Pa. 547, 553 (2000). In *Althaus*, the Pennsylvania Supreme Court explained, "[t]he determination of whether a duty exists in a particular case involves the weighing of several discrete factors which include: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution." *Althaus*, 562 Pa. at 553.

Here, Plaintiff alleges that Defendants exercised control over her workplace, supervised her through Bland, and knew of prior sexualized misconduct but failed to implement adequate safeguards. These allegations plausibly support a direct duty to provide a reasonably safe working environment. Whether such a duty exists, and whether Defendants breached it are fact-intensive questions that cannot be resolved at this stage. As previously noted, discovery will clarify the nature of Defendants' control, supervisory structure, and knowledge of Bland's conduct. Dismissal of this claim at the pleading stage would improperly resolve disputed factual issues in Defendants' favor.

### G. Fraud and Negligent Misrepresentation

Defendants argue that Plaintiff's fraud and negligent misrepresentation claims must be dismissed because Plaintiff fails to plead fraud with the particularity required by Rule 9(b) and otherwise fails to state a claim under Rule 12(b)(6). *See* Def.'s Mot. to Dismiss, at 18-19. Defendants again contend that Plaintiff improperly groups multiple corporate entities together as "SFE" or "SFE Energy" without identifying which specific entity made the alleged misrepresentations regarding her enrollment into the energy contract. *Id.* at 19. Defendants assert

that the Complaint does not allege the date, time, place, or speaker of the alleged misrepresentation, and therefore fails to provide fair notice of the precise misconduct charged. *Id.*

Plaintiff counters that Defendants ignore the detailed factual allegations incorporated into those claims. *See* Pl.'s Resp. in Opp. at 22. She argues that Rule 9(b) is satisfied because the Complaint identifies: the specific transaction; the false information used to effectuate that enrollment; the substance and recipients of the misrepresentations; the manner in which the fraud was accomplished, and the resulting harm. *Id.* at 22-23. Plaintiff further argues that the identity of the specific SFE employee who transmitted the false authorization, and the precise date it was entered into Defendants' systems, are facts uniquely within Defendants' possession.

She notes that the Third Circuit has cautioned against applying Rule 9(b) so rigidly so that Defendants may conceal the operational details of their own misconduct. *In re Craftmatic Securities Litigation v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1990) ("Courts have relaxed the rule when factual information is peculiarly within the defendant's knowledge or control"). Plaintiff also argues that the claim is independently sufficient under Rule 8 because negligent misrepresentation does not require fraudulent intent. *See* Pl.'s Resp. in Opp. at 23. According to Plaintiff, even if Rule 9(b) applies because both claims arise from the same transaction, the allegations provide adequate particularity. *Id.*

Rule 9(b) requires that a plaintiff plead the "circumstances" of the alleged fraud with sufficient particularity to place defendants on notice of the misconduct charged. *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). But Rule 9(b) does not demand "date-place-time" specificity where such details are uniquely within the defendant's control, and courts in this Circuit have relaxed the standard in cases involving internal corporate processes or opaque business structures. *Craftmatic*, 890 F.2d at 645.

Here, Plaintiff alleges that Defendants used overlapping entities, aliases, employees, and shared sales systems that obscured which SFE entity performed each act. She sufficiently identifies the specific transaction, the nature of the misrepresentation, the mechanism by which her enrollment was falsified, and the resulting harm. These allegations plausibly describe the "who, what, when, where, and how" of the alleged misconduct, even if the precise identity of the individual employee or the exact timestamp of the fraudulent entry remains unknown. At this stage, Rule 9(b) does not require more.

As for negligent misrepresentation, even if the heightened standard governs because both claims arise from the same conduct, Plaintiff's allegations are sufficiently particular to state a plausible claim. The Complaint alleges a specific misrepresentation, a specific transaction, and a specific injury. That is enough under Rule 12(b)(6). Finally, as noted above, discovery will clarify the roles of the various SFE entities, the identity of the responsible actors, and the internal process used to enroll Plaintiff. Accordingly, dismissal at this stage is not warranted.

**H. Alter Ego Liability**

Defendants next argue that the Complaint fails to allege facts sufficient to support alter-ego liability. *See* Def.'s Mot. to Dismiss, at 21. They contend that Pennsylvania law requires a "very high showing of domination and control" to pierce the corporate veil, and Plaintiff has not alleged any of the traditional veil-piercing factors such as undercapitalization, intermingling of personal and corporate affairs, nonfunctioning officers, or failure to observe corporate formalities. *Id.* Defendants assert that Plaintiff conflates multiple corporate entities without identifying which entity allegedly disregarded corporate separateness or used the corporate form to perpetrate fraud.

*Id.* at 21-22. Because Plaintiff's allegations are conclusory and undifferentiated, Defendants argue that Plaintiff has failed to state a claim for alter ego liability. *Id.* at 22.

Plaintiff counters that Defendants improperly treat alter ego liability as if she must actually prove veil piercing at the pleading stage. *See* Pl.'s Resp. in Opp. at 24. She also argues that alter ego is not an independent cause of action, but an equitable doctrine applied where corporate separateness has been abused. *Id.* Plaintiff argues that IMG and the SFE entities operated with common ownership, management, personnel, supervision, and business purpose; used corporate names interchangeably; exercised centralized control over employment operations; and maintained an intentionally opaque structure that obscured which entity exercised actual control. *Id.* She further alleges that IMG lacked a consistent corporate presence and functioned as a nominal or front-facing entity through which SFE conducted recruitment and sales operations. *Id.* Plaintiff contends that these allegations plausibly support an inference that respecting corporate separateness would promote the very type of injustice the alter ego doctrine is designed to prevent. *Id.* Plaintiff further emphasizes that veil piercing is fact-intensive and that evidence concerning capitalization, financial independence, ownership, and corporate formalities lie uniquely within Defendants' possession. *Id.* at 25.

The Court concludes that the Complaint alleges overlapping ownership, shared executives, centralized labor-relations control, interrelated operations, interchangeable use of corporate names, and a structure allegedly designed to obscure the identity of the true employing entity. Accepting these allegations as true, Plaintiff plausibly alleges that IMG and the SFE entities operated as alter egos or a single integrated enterprise. As discussed earlier, the nature of the relationship among IMG and the SFE entities is a fact-intensive question requiring discovery. Whether the entities observed corporate formalities, maintained separate finances, or used IMG as

a façade are matters within Defendants' possession, Thus, dismissal at this stage would be improper.

### I. Supplemental Jurisdiction

Defendants first contend that the Court lacks supplemental jurisdiction over Plaintiff's energy contract and identity theft claims because those causes of action are unrelated to the Title VII claim that supplies federal question jurisdiction. *See* Def.'s Mot. to Dismiss, at 22. Defendants argue that the only connection between the federal employment claim and the contract enrollment claim is the general employer-employee relationship, which is insufficient to establish a common nucleus of operative fact." *Id.* at 23. They assert that the Title VII claims arise from the alleged workplace harassment and discrimination by Bland, whereas the energy contract and identity theft claims arise from a separate alleged unauthorized enrollment. *Id.* at 23-24. Because the factual predicates do not overlap, Defendants argue that § 1367(a) does not permit supplemental jurisdiction. *Id.* at 24. Defendants also argue that if the Court dismisses the Title VII claims against Summit, SFE Energy, and SFE Canada for failure to exhaust administrative remedies, then the Court should decline supplemental jurisdiction over all remaining state law claims asserted against those entities. *Id.*

Plaintiff, however, argues that § 1367(a) permits supplemental jurisdiction over all state law claims that form part of the same case or controversy, including claims asserted against co-defendants. *See* Pl.'s Resp. in Opp. at 25. Plaintiff argues that her federal and state law claims arise from the same employment relationship, workplace conduct, supervisory structure, and termination, and therefore share overlapping factual questions regarding the identity of her employer, the roles of the various SFE entities, and the nature of their control over her work. *Id.*

at 27. Plaintiff also argues that considerations of judicial economy, convenience, and fairness favor resolving the intertwined claims together. *Id.*

Section 1367(a) grants supplemental jurisdiction over state law claims that "form part of the same case or controversy" as the federal claim. 28 U.S.C. § 1367(a). The standard is broader than the narrow factual-identity requirement Defendants suggest. Claims need not arise from identical facts. They must simply be "so related" that they form part of the same case. *Id.*

Here, Plaintiff's federal and state-law claims arise from the same alleged employment relationship, supervisory structure, and corporate configuration. As discussed above, discovery is required to determine the nature of the relationships among IMG and the SFE entities, who exercised control over Plaintiff's work, and how Defendants' internal systems operated. Those same factual questions bear directly on the energy-contract and identity-theft claims, which involve allegations that Defendants used overlapping entities, shared systems, and opaque corporate structures to enroll Plaintiff without authorization.

At this stage, the Court will exercise supplemental jurisdiction over the state-law claims. However, the Court notes that the energy contract claim may ultimately raise predominance concerns under § 1367(c)(2) depending on how the factual record develops. *See Marchese v. 21st Century Cyber Charter Sch.*, 2024 WL 4771399 (E.D. Pa. Nov. 13, 2024); *Houtz v. Paxos Restaurants*, 2024 WL 4336738 (E.D. Pa. Sept. 27, 2024). Defendants' contingent argument also fails. As previously noted, the Court will not dismiss the Title VII claims against Summit, SFE Energy, or SFE Canada.

**J. Contract and Identify Theft Claims**

Defendants also argue that four of Plaintiff's claims should be dismissed under the primary jurisdiction doctrine because they involve alleged "slamming" – unauthorized enrollment in an

energy supply contract – an area they contend falls within the Pennsylvania Public Utility Commission's ("PUC") regulatory authority. *See* Def.'s Mot. to Dismiss, at 24. Defendants emphasize that the PUC licenses electric-generation suppliers, enforces regulations governing customer enrollment, and adjudicates complaints involving improper supplier transfers. *Id.* at 24-25. Applying the *Baykeeper* factors, Defendant asserts that the PUC has specialized expertise, discretion, and authority over such matters, and that referral is necessary to avoid inconsistent rulings. *Id. See also Baykeeper v. NL Indus. Inc.*, 660 F.3d 686, 691 (3d Cir. 2011).

Plaintiff argues that the doctrine does not apply because her claims do not challenge a rate, tariff, service standard, or technical utility practice. *See* Pl.'s Resp. in Opp. at 27-28. Instead, she alleges that Defendants obtained her utility bill through a misrepresentation made by the IMG Vice President; used her personal information without authorization; created an account in her name; and caused her to incur a cancellation fee. *Id.* at 28. Plaintiff argues that these are traditional tort questions – fraud, misrepresentation, identity theft, and damages – that do not require the PUC's expertise. The Court agrees.

The primary jurisdiction doctrine applies only when resolution of a claim requires the specialized expertise of an administrative agency. *See MCI Telecomm. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1103 (3d Cir. 1995). Courts must look beyond the form of action to the essence of the underlying claims. *See SGB Mgmt. Servs. Inc. v. Phila. Gas Works*, 341 A.3d 242 (Pa. Commw. Ct. 2025). Plaintiff does not challenge the adequacy of a utility service, the reasonableness of rates, or compliance with technical enrollment standards. She alleges that Defendants misused personal information obtained through an employment relationship to create an unauthorized customer account. These allegations present questions of matters well within judicial competence. The PUC has no comparative expertise in determining whether IMG's Vice President made the alleged

misrepresentation, whether Plaintiff relied on it, or whether Defendants intentionally used her information without consent. Accordingly, this argument fails and dismissal is denied.

## V. CONCLUSION

The Court concludes that Plaintiff has plausibly alleged each challenged claim, that none of the asserted grounds for dismissal warrant relief at the Rule 12(b)(6) stage, and that the remaining issues identified are properly resolved through discovery. Accordingly, Defendants' Motion to Dismiss is DENIED. An appropriate Order will follow.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge